**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| AMY WHITE, | )     CASE NO. 5:25-CV-02554-PAB |
| | ) |
|        Plaintiff, | )     JUDGE PAMELA A. BARKER |
| | )     UNITED STATES DISTRICT JUDGE |
|    v. | ) |
| | )     MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | )     CARMEN E. HENDERSON |
| | ) |
|        Defendant, | )     **REPORT & RECOMMENDATION** |
| | ) |

## I. Introduction

Plaintiff, Amy White ("White" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## II. Procedural History

On June 14, 2023, White filed an application for SSI, alleging a disability onset date of December 5, 2020, and claiming she was disabled due to bipolar disorder, PTSD, anxiety, back problems, and endocarditis. (ECF No. 7, PageID #: 64, 205, 244-45). The application was denied initially and upon reconsideration, and White requested a hearing before an administrative law judge ("ALJ"). (ECF No. 7, PageID #: 124-25). On January 29, 2025, an ALJ held a hearing, during which White, represented by counsel, and an impartial vocational expert testified. (ECF

1

No.  7, PageID #: 67-88).  On, February 21, 2025 the ALJ issued a written decision finding White was not disabled.  (ECF No. 7, PageID #: 46-56).  The ALJ's decision became final on September 24, 2025, when the Appeals Council declined further review.  (ECF No.  7, PageID #: 27-29).

On November 24, 2025, White filed her Complaint to challenge the Commissioner's final decision.  (ECF No. 1.)  The parties have completed briefing in this case. (ECF Nos. 8, 10). White asserts the following assignments of error:

> (1)     The ALJ failed to properly account for the mental health opinions of the state agency non-examining reviewing experts.

(ECF No. 8).

## III. Background

### A.  Relevant Hearing Testimony

The ALJ summarized the relevant testimony from White's hearing:

> At the hearing, the claimant testified that she cannot work primarily due to conditions such as bipolar disorder and anxiety disorder. According to the claimant, she feels that people are out to get her, she experiences bad paranoia in public places, and she has a hard time maintaining concentration, especially with fast paced tasks. She indicated that she is currently taking psychiatric medications such as Vraylar and Topiramate, they are someone helpful, and they result in side effects such as tardive dyskinesia that affects that muscles in her face and arms. The claimant further alleged that she has short-term memory problems, she often forgets simple things, and it is difficult for her to remember and follow instructions. Turning to substance abuse issues, the claimant testified that she has a history of heroin use, she has been sober for the past two years, and she currently receives substance abuse treatment at a methadone clinic. Regarding physical health impairments, the claimant testified that she has a history of cardiac issues, she underwent heart surgery, she does not experience any residual issues from her surgery, and she was diagnosed with hepatitis, but she does not receive treatment for this condition. Regarding activities of daily living, the claimant testified that she last worked briefly in 2022, she currently lives with her boyfriend, she does not have a driver's license or drive, and on a typical day, she performs household chores such as cleaning, paying bills, watching television, and occasionally going grocery shopping.

(ECF Doc. 7, PageId #: 51-52).

2

**B.  Relevant Medical Evidence**

The ALJ also summarized White's health records and symptoms:

the claimant has mental impairments including posttraumatic stress disorder (PTSD), bipolar disorder, generalized anxiety disorder, heroin use, and schizoaffective disorder. In June of 2023, the claimant presented to Coleman Behavioral Health for a diagnostic assessment. At this time, the claimant reported that she experienced whole body pain stemming from possible fibromyalgia, she did not have any current suicidal or homicidal ideation, and she had a history of suicide attempts in the past "years ago" (Exhibit 3F, pg. 1). Upon mental status examination at this time, the claimant was alert and oriented to all spheres, her behavior was cooperative, she reportedly experienced auditory hallucinations and paranoia, her insight and judgment were fair, her speech was clear, and her thought processes were logical (Exhibit 3F, pg. 5). In April of 2024, the claimant presented to Dr. Dubey for a psychological consultative examination, with reports that she was applying for disability benefits primarily due to bipolar disorder and schizophrenia symptoms that began in her childhood (Exhibit 7F, pg. 1). According to the claimant, she restarted mental health treatment four months ago, which she found helpful, she had a history of treatment in her teenage years, and she was psychiatrically hospitalized three times between the ages of 17 to 22 for suicidal behavior and mental breakdowns (Exhibit 7F, pg. 2-3). The claimant further reported that her history of substance abuse included drinking alcohol two to three times per week until she quit drinking roughly one year ago (Exhibit 7F, pg. 3). Upon mental status examination at this time, the claimant was alert and oriented to all spheres, her thought processes were logical, eye contact was appropriate, and she did not need simple directions explained or repeated (Exhibit 7F, pg. 4). Based on these findings, Dr. Dubey diagnosed the claimant with various impairments such at PTSD, generalized anxiety disorder, and alcohol use disorder – severe and in early remission (Exhibit 7F, pg. 6).

(ECF Doc. 7, PageID #: 52-53).

**C.  Opinion Evidence at Issue**

White challenges the ALJ's treatment of the opinions of the state agency reviewing psychologists, whose opinions he addressed in combination with the opinion of the psychological consultative examiner:

The undersigned finds the State agency psychological consultants' mental assessments mostly persuasive, who assigned the claimant with moderate level mental limitations such as the performance of simple, repetitive tasks (Exhibit 2A; 4A). The undersigned also finds the psychological consultative examination of Dr. Dubey mostly persuasive, who assigned the claimant with above-described

3

limitations in areas such as relating to others and handling workplace pressures (Exhibit 7F). These opinions, although somewhat vague and not fully stated in vocational terms at parts, are generally consistent with the above residual functional capacity, as well as the claimant's medical records and treatment history, without evidence of recent psychiatric hospitalization or other serious issues noted in the record. Additionally, the DDS consultants thoroughly reviewed the medical record, and they are experts regarding Social Security Disability evaluation.

(ECF Doc. 7, PageID #: 54).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant has not engaged in substantial gainful activity since June 8, 2023, the application date.
2. The claimant has the following severe impairments: ischemic heart disease, endocarditis, hepatitis C, heroin use, residuals of pulmonary embolism, posttraumatic stress disorder (PTSD), bipolar disorder, generalized anxiety disorder, and schizoaffective disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to occasional overhead reaching bilaterally; the claimant is able to understand, remember, and carry out simple instructions; the claimant has the concentration, persistence, and pace to perform simple and routine tasks; the claimant is unable to perform fast paced production rate pace-work (i.e. assembly line work or jobs that require strict hourly production quotas); the claimant is limited to occasional interaction with the public, coworkers, and supervisors; the claimant is unable to perform tandem tasks; and the claimant is limited to occasional changes within a routine work setting.

5. The claimant has no past relevant work.

6. The claimant was born [in April] 1992 and was 31 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has a limited education.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 8, 2023, the date the application was filed.

(ECF Doc. 7, PageID #: 48-56).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the

claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

White raises a single issue on appeal: that ALJ's residual functional capacity, as a whole, failed to account for all of the reviewing psychologists' opinions in formulating his Residual Functional Capacity ("RFC") determination. (ECF No. 8, p. 8-12). Because the ALJ offers no explanation of why certain elements of these experts' opinions were rejected, White asserts his resulting RFC assessment fails to comply with Social Security Ruling 96-8p, which requires that an RFC determination consider and address all medical opinions, and explain any conflicts. *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996).

The Commissioner responds that the ALJ was clear in explaining that, although he found the reviewing psychologists' opinions persuasive, he was not adopting them in their entirety. (ECF

6

Doc. 10, p. 6-7). Therefore, he did not err when he adopted "similar, but not identical, limitations in the RFC finding to account for the portions of the determination he found [persuasive]." (*Id*. at p. 7).

The determination of RFC is expressly reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(2). An ALJ is not required to adopt every limitation that State agency psychologists suggest, or to mirror or parrot medical opinions verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Commissioner of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

However, SSR 96-8p requires that [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. Courts in this Circuit have repeatedly enforced this requirement. *See Vaughn v. Comm'r of Soc. Sec.,* No. 1:21-CV-01373, 2022 WL 3280081, at *6 (N.D. Ohio May 31, 2022), *report and recommendation adopted*, No. 1:21-CV-001373, 2022 WL 3998848 (N.D. Ohio Sept. 1, 2022); *Hoffer v. Comm'r of Soc. Sec.*, No. 3:20-CV-2871, 2022 WL 584666, at *6, (N.D. Ohio Feb. 11, 2022) ("This Court recognizes that the ALJ need not address all limitations; however, where the RFC does not include the limitation, the ALJ must explain why the limitation was not included.... [Otherwise], this Court is left to speculate as to whether the ALJ intended to include the limitation but merely overlooked it or whether she did not find such limitation credible."); *Rager v. Comm'r of SSA*, No. 3:20-CV-1200, 2021 WL 2982003, at *18 (N.D. Ohio 2021) (same) *adopted* 2021 WL 2982003 (N.D. Ohio Jul. 15, 2021) (same).

Here, the two reviewing psychologists who reviewed the record at earlier stages of the

disability determination process reached largely identical conclusions. The findings raised in White's assignment of error relate to White's social interaction and adaptation limitations. Both Stacia Hill, Ph.D and Shannon Ratzenburg, Psy.D., found that White would:

- be limited to superficial contact with others, defined as no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others or being responsible for the safety or welfare of others; and

- would need changes to routine in work setting explained in detail before implementation.[1]

(ECF Doc. 7, PageID #: 95, 105-06).

> The ALJ explained his consideration of the reviewing psychologists' opinions as follows:

> The undersigned finds the State agency psychological consultants' mental assessments mostly persuasive, who assigned the claimant with moderate level mental limitations such as the performance of simple, repetitive tasks (Exhibit 2A; 4A).… These opinions, although somewhat vague and not fully stated in vocational terms at parts, are generally consistent with the above residual functional capacity, as well as the claimant's medical records and treatment history.

(*Id*. at Page ID #: 54). This explanation is somewhat difficult to follow. Both reviewing psychologists did assess moderate mental limitations in all four domains. Yet, as White points out, the ALJ did not incorporate the social interaction limitations or the adaptation limitations assessed by the reviewing psychologists. Instead, his RFC determination limited White to:

- "occasional interaction with the public, coworkers, and supervisors;"

- No "tandem tasks;" and

- "occasional changes within a routine work setting."

(*Id*. at PageID #: 51). The social interaction and adaptation limitations will be evaluated in turn.

### a. Social Interaction Limitations

---

[1] Dr. Hill included an additional adaptation limitation that "[t]o the extent cognitive issues would be present in the work situation the claimant should avoid inherently hazardous work activities without appropriate safeguards and supervision." (ECF Doc. 7, PageID #: 95). White does not assert any assignment of error related to this limitation.

First, White challenges the ALJ's failure to explain the omission of the social interaction limitation to "superficial interaction" which was one of the reviewing psychologists' opined limitations. The ALJ's RFC determination that White was limited to "occasional' interaction conflicts with the psychological reviewing experts' opinions that she was limited to "superficial" interaction. Many courts in the Sixth Circuit have recognized that the terms "occasional interaction" and "superficial interaction" are not interchangeable. "Occasional contact refers to the quantity of time spent with others, whereas superficial contact goes to the quality of the interactions." *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-cv-18, 2018 WL 625473, at *4 (S.D. Ohio Nov. 30, 2018) (internal quotations omitted); *Redd v. Comm'r of Soc. Sec.*, No. 1:20-cv-222, 2021 WL 1960763, at *4 (W.D. Mich. May 17, 2021) ("With regard to social limitations, courts have distinguished limitations that concern 'the quality or nature of interactions' from limitations that concern 'the quantity of time involved with those interactions.' ").

As a result, "courts within the Sixth Circuit routinely find that an ALJ may not replace a limitation regarding 'superficial interaction' with one regarding 'occasional interaction,' absent explanation. *Moon v. Comm'r of Soc. Sec.*, No. 3:20-CV-01773-JGC, 2021 WL 5748390, at *7 (N.D. Ohio Nov. 1, 2021), *report and recommendation adopted*, No. 3:20-CV-01773-JGC, 2021 WL 5743744 (N.D. Ohio Dec. 2, 2021); citing *Corey v. Comm'r of Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) (remanding because "where, as here, the ALJ assigns significant weight to a particular opinion and states it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so[,]" otherwise, the court is unable to "conduct[ ] meaningful review to determine whether substantial evidence supports his decision"); *Fenton v. Comm'r of Soc. Sec.*, No. 1:20-CV-413, 2021 WL 3721212, at *3 (S.D. Ohio Aug. 23, 2021) (ALJ committed reversible error by assigning great weight to

9

opinion that the plaintiff was limited to superficial interactions but including an occasional interaction limitation in plaintiff's RFC in its place without explaining the substitution), *report and recommendation adopted*, No. 1:20-CV-413, 2021 WL 4077990 (S.D. Ohio Sept. 8, 2021); *Runyon v. Comm'r of Soc. Sec.*, No. 2:20-CV-3820, 2021 WL 3087639 (S.D. Ohio July 22, 2021) (same), *report and recommendation adopted*, No. 2:20-CV-3820, 2021 WL 3489615 (S.D. Ohio Aug. 9, 2021); *Clampit v. Comm'r of Soc. Sec.*, No. 3:20-CV-1014, 2021 WL 3174111, at *2 (N.D. Ohio July 26, 2021) (same).

As White notes, in her case the ALJ found the state agency psychological consultants' opinions to be mostly persuasive but replaced their opinions' "superficial interaction" limitations with his own "occasional interaction" limitation. The ALJ did not offer an adequate explanation for the substitution, "leaving the court to speculate whether the ALJ found the 'superficial' limitation not credible or did not otherwise appreciate the important distinction between 'occasional' and 'superficial.'" *Moon*, 2021 WL 5748390, at *7.

The Commissioner notes that, by deeming the opinions "mostly persuasive," the ALJ indicated disagreement with some elements of their opinions, and correctly asserts that the ALJ was not required to incorporate any of the reviewing psychologists' findings into his RFC determination. (ECF Doc. 10, p. 6-7). However, these arguments miss the essential point of White's assignment of error, which is that the ALJ failed to provide an adequate explanation for the differences between the social interaction limitations in his RFC determination and the opinions of the reviewing psychologists.

As White points out, SSR 96-8p requires that in cases like this one, where the RFC assessment conflicts with an opinion from a medical source, "the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. The ALJ's only explanation

10

for finding the opinions only partially persuasive was that the opinions are "somewhat vague and not fully stated in vocational terms at parts." (ECF Doc. 7, PageID #: 54). This explanation fails to explain the change in social interaction limitations, especially because, the reviewing psychologists did further define the term "superficial interactions" in vocational terms, explaining that it meant "no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others or being responsible for the safety or welfare of others." (ECF Doc. 7, PageID #: 95, 105-06). This creates uncertainty regarding whether the ALJ's broad and vague explanation is applicable to this section of their opinions at all.

The Commissioner also suggests that the ALJ intended to limit the quality of White's interactions with others by limiting her to "no tandem tasks." (ECF Doc. 10, PageID #: 7). He cites *Duma-Quigley v. Commissioner*, which held that "the limitation to no tandem tasks or teamwork adequately accounted for any superficial interaction limitation."). *Duma-Quigley v. Comm'r,* No. 3:22 CV 917, 2023 WL 3016861, at *4 (N.D. Ohio Apr. 20, 2023). However, that case is distinct, because in *Duma-Quigley*, the ALJ provided the clear explanation required by SSR 96-8p, stating "the evidence did not fully support that the claimant was limited to only superficial basis with others," and then specifically citing to the record evidence supporting that conclusion. *Id*. at *2. Further, both the ALJ and the Court in *Duma-Quigley* were clear that the ALJ had partially discounted the superficial interaction limitation, and in that case the limitation to no tandem tasks was clearly adopted as a less-restrictive, alternative limitation. The other case cited by the Commissioner, *Wieman v. Commissioner of Social Security,* involves a similar fact pattern: the court's determination that the limitation to "no tandem tasks" was a well-supported alternative to "superficial interaction" where, in the subsequent paragraph, the ALJ provided a clear and detailed analysis of the claimant's social interaction limitations, and therefore "the ALJ's

11

opinion – read with common sense and as a whole – properly accounts for Plaintiff's mental health limitations, including those opined by the state agency psychologists." *Wieman v. Comm'r of Soc. Sec.,* No. 3:22 CV 1045, 2023 WL 5541597, at *2 (N.D. Ohio Aug. 29, 2023).

Here, unlike in *Duma-Quigly* and *Wieman,* The ALJ's explanation of White's social functioning limitations in the other portions of the decision does not provide context or explanation of his limitation to "no tandem tasks." The ALJ explains:

> In interacting with others, the claimant has a moderate limitation. Consultative examiner Dr. Dubey concluded that the claimant would have some difficulties relating to others in a workplace due to her mental health symptoms, which would create some problems for her coworkers and supervisors, but her presentation was stable and calm during the evaluation, she denied any legal history related problems relating to others, and her past work relationships were reportedly difficult at times, but she had a history of appropriate and stable social and family relationships.

(ECF Doc. 7, PageID #: 50). The ALJ concluded that her mental health symptoms would cause problems for her coworkers and supervisors, and her past work relationships were reportedly difficult. In contrast, her more successful social interactions were with medical providers and family. This leaves the Court guessing as to why the ALJ concluded that fewer qualitative restrictions on workplace interactions were required.

As the Commissioner points out, *Duma-Quigly* and *Wieman* do collect other cases that do hold that "limitations to no team or tandem tasks properly account for a limitation on superficial interactions with others." *See, e.g., Duma-Quigley* 2023 WL 3016861, at *4; citing *Kearns v. Comm'r of Soc. Sec.*, 2020 WL 2841707, at *12 (N.D. Ohio), *report and recommendation adopted*, 2020 WL 2839654 ("The ALJ's limitation to no team or tandem tasks is a qualitative limitation on social interaction and adequately addressed the opinion of Drs. Matyi and Finnerty that Kearns be limited to superficial interaction with others."); *Romo v. Comm'r of Soc. Sec.*, 2021 WL 5040385, at *7 (N.D. Ohio), *report and recommendation adopted*, 2021 WL 4437062 ("Here,

since the ALJ limited Claimant to 'no tandem work', such a limitation prevents him from working alongside coworkers and supervisors. It logically follows then that the only interaction that Claimant would have with his coworkers and supervisors would be superficial."). These cases do state that "no tandem tasks" is a qualitative limitation on social interaction. However, they do not hold that no explanation is necessary under SSR 96-8p when an ALJ substitutes a less restrictive limitation for the one in the medical opinions he deemed persuasive.

The undersigned agrees with the Commissioner's assertion that "the ALJ was not required accept the consultants' findings wholesale even where he found them persuasive to some extent." (ECF Doc. 10, p. 7). The undersigned also agrees that a limitation to "no tandem tasks" relates to the quality rather than the quality of social interaction. However, that is not White's argument. White correctly notes that the ALJ failed to provide an explanation for this section of his opinion, as required by SSR 96-8p. Therefore, the undersigned recommends remand to allow the ALJ the opportunity to correct this error.

### b. Adaptive Limitations

The other issue raised by White relates to her adaptive limitations. She asserts that the ALJ erred by failing to incorporate the reviewing psychologists' limitation that any work changes should be explained in detail before they were implemented. (ECF Doc. 8, p. 11). She asserts that the ALJ's limitation to occasional changes in a routine work setting is distinct because it applies to the quantity of changes, and would not account for the qualitative limitation to have the changes explained. (*Id.* at pp. 11, 12).

As the Commissioner points out, the same analysis regarding qualitative and quantitative changes can be applied to this issue. (ECF Doc. 10, p. 8). However, the same issue regarding a lack of explanation equally applies.

13

In the portion of his decision evaluating the four domains of mental functioning, the ALJ explained:

> As for adapting or managing oneself, the claimant has experienced a moderate limitation. Consultative examiner Dr. Dubey concluded that the claimant would have many difficulties in this area, her mood-related issues would significantly worsen under pressure, and this would create moderate related difficulties for coworkers and supervisors (Exhibit 7F, pg. 7). However, the claimant told Dr. Dubey that she was able to perform basic activities of daily living such as shopping, managing money, caring for her pets, taking her medications, and her hobbies including coloring, watching television, spending time on her phone, and going to church.

(ECF Doc. 7, PageID #: 50). This analysis highlights the fact that White's capacity for adaptation would decrease under pressure, and that she was most capable in routine, familiar, self-directed activities. Thus, it fails to provide any explanation for the ALJ's decision to omit the reviewing psychologists' limitation to have "changes to routine in work setting explained in detail before implementation."

Again, the undersigned agrees with the Commissioner that "the ALJ was not required to adopt the prior administrative findings verbatim." (ECF Doc. 10, p. 8). However, the Commissioner fails to address the issue raised by White: whether the explanation provided by the ALJ is adequate to meet the requirements of SSR 96-8p, which requires that, where "the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. "This Court recognizes that the ALJ need not address all limitations; however, where the RFC does not include the limitation, the ALJ must explain why the limitation was not included.... [Otherwise], this Court is left to speculate as to whether the ALJ intended to include the limitation but merely overlooked it or whether she did not find such limitation credible." *Hoffer,* 2022 WL 584666, at *6.

14

Here, the ALJ's failure to provide adequate explanation for his RFC determination leaves the Court speculating as to his intent and reasoning. Therefore, the undersigned recommends that the ALJ take the opportunity of remand to clarify his analysis of this portion of the opinion as well.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: August 12, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).